**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JAMES GUNN,

      Petitioner,

v.

DAVID BERGH,

      Respondent.

_____/

Case No. 15-cv-13776
Hon. Matthew F. Leitman

## OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS (ECF #1), (2) DENYING A CERTIFICATE OF APPEALABILITY, AND (3) GRANTING PERMISSION TO APPEAL IN FORMA PAUPERIS

Petitioner James Gunn is a state prisoner in the custody of the Michigan Department of Corrections. On October 23, 2015, Gunn filed a petition for a writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254. (See ECF #1.) In the petition, Gunn challenges his state-court conviction for first-degree criminal sexual conduct, Mich. Comp. Laws § 750.520b ("CSC I"). The state trial court sentenced Gunn to 225 months to 30 years imprisonment.

The Court has reviewed Gunn's claims and concludes that he is not entitled to federal habeas relief. Accordingly, for the reasons set forth below, the Court will **DENY** his petition. The Court will also decline to issue Gunn a certificate of appealability. However, it will grant him permission to appeal *in forma pauperis*.

# I

Gunn's conviction arises from an August 1, 2008, encounter with a woman he met at a party store. The Michigan Court of Appeals described the underlying facts as follows:

> The complainant testified that on the evening of August 1, 2008, her friend and her boyfriend asked her to purchase alcohol. She drove to a party store, where she arrived at about midnight. When she began to exit her vehicle, she was grabbed by the neck. A male voice told her to "[g]et in the car," and pushed her back into the car.
>
> The complainant testified Gunn sat down in the passenger seat and again grabbed her neck, telling her to drive. The complainant testified that she drove where she was told, that Gunn's hand was on her neck the entire time she was driving, and that he jerked her head around. The complainant testified that when her cell phone kept ringing, Gunn picked it up with his other hand and beat her in the face with it.
>
> The complainant testified that Gunn told her to park near a school, where he forced her to perform fellatio. At some point afterward, a red SUV arrived; Gunn left her vehicle, and went into the SUV. She called her friend to ask how to get back to her house, but that she did not call 911 because she thought they would instruct her to stay at the scene and she was concerned that Gunn would come back.
>
> Gunn testified that he was at the party store at about 11:15 p.m. with his friends, including James Donald and Mark White. Donald testified that White drove them to the store in a red SUV. Gunn testified that after he made purchases, the complainant approached him in the parking lot and asked if he knew where she could purchase crack cocaine. Gunn testified that he gave the complainant directions to a "crack house," but she asked him to drive her there in her vehicle.

Donald testified that Gunn told him that he was going to ride with the complainant; Gunn drove her car, following White's SUV. Donald and White stopped by the school, and White dropped Donald off. Donald testified that a short while later, the complainant dropped Gunn off and asked how to get to the highway. The complainant did not appear injured.

Gunn testified that he drove the complainant's vehicle to his cousin's house near a school and called his drug dealer a few times, but that his drug dealer did not respond. Gunn testified that he did touch and kiss the complainant while they were in the car, but that he did not strike her. He testified that he did not force the complainant to engage in fellatio, but that she chose to do so. Gunn testified that when his drug dealer did not arrive, the complainant said that she had to leave because it was late and her boyfriend would be upset.

The complainant's boyfriend took her to the emergency room at Covenant Hospital, where she was treated and given stitches. Sue Gatza, who was working at Covenant Hospital that evening as a sexual assault response nurse, testified that she treated the complainant for bruises, areas of tenderness on her head, and a laceration on her lip that required stitches. Gatza also testified that the complainant was very upset and crying.

Saginaw Police Officer Roger Pate testified that he arrived at the hospital at around 9:00 a.m. on August 2 to interview the complainant and collect evidence. An evidence technician recovered a partial hand print from the outside of the complainant's car, above the driver's side door. The evidence also included a facial swab, and blood from the complainant's cell phone.

The complainant testified that in 2010, she saw a picture of Gunn in the paper, and recognized him as the man who assaulted her in 2008. Detective Oberle testified that he interviewed Gunn and showed Gunn the complainant's picture. Detective Oberle testified that Gunn denied leaving the party store with the complainant, or going anywhere with

her in her vehicle, or having any kind of sexual contact with her. Gunn testified that he did not think that Detective Oberle was asking about fellatio.

Michigan State Police forensic scientist Gary Ginther testified that he compared the palm print with a copy of Gunn's palm print that was available in the Automated Finger Identification System, and determined that it was a match. Michigan State Police forensic scientist Lauren Lu testified that there was more than one person's blood on the cell phone, and that the complainant was the blood's primary donor. Lu testified that the complainant's facial swab contained sperm matching Gunn's DNA.

*People v. Gunn*, 2013 WL 466289, at ** 1–2 (Mich. Ct. App. Feb. 7, 2013).

Following a three-day trial in the Saginaw County Circuit Court, a jury convicted Gunn of CSC I. Gunn then filed an appeal of right in the Michigan Court of Appeals, raising the following claims:

I. The trial court violated his due process rights by requiring him to appear in shackles at trial, and his trial counsel was ineffective for failing to object to the shackling;

II. Trial counsel was ineffective for failing to object to a state police fingerprint expert's testimony that Gunn's palm print was "in the system,";

III. The trial court violated his due process right to present a defense by preventing defense counsel from impeaching the complainant with a prior inconsistent statement;

IV. Due process requires resentencing where the trial court improperly scored the offense; and

V. The trial court violated the *ex post facto* clause of the Michigan and United States Constitutions by imposing a $130 crime victim rights fund assessment where the statute

in effect at the time of commission of the offense provided
for only a $60 assessment.

The Michigan Court of Appeals affirmed Gunn's conviction. *See Gunn*, 2013 WL

466289. Gunn filed an application for leave to appeal in the Michigan Supreme Court,

and that Court denied leave. *See People v. Gunn*, 846 N.W.2d 389 (Mich. 2014).

Gunn next filed a motion for relief from judgment in the state trial court. (*See*

ECF #9-15.) In that motion, Gunn raised three claims:

I. Ineffective assistance of appellate counsel;

II. Trial counsel failed to interview and subpoena witnesses,
denying Gunn an opportunity to present a defense; and

III. Trial counsel was ineffective for failing to request complete
medical records and the complaint filed by the victim and
was ineffective for failing to challenge the validity of the
DNA search warrant.

(*See id.*)

The state trial court denied Gunn's motion. Gunn then filed an application for

leave to appeal in the Michigan Court of Appeals. (*See* ECF #9-18.) That court denied

leave on the ground that Gunn failed to establish entitlement to relief under Michigan

Court Rule 6.508(D). (*See id.*)

Gunn thereafter filed the instant petition for habeas relief in this Court. (*See* ECF

#1.) He raises the same claims here that he brought before the Michigan Court of

Appeals in his initial appeal.

**II**

The majority of Gunn's claims are reviewed under the standards established in the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254(d) ("AEDPA"). AEDPA provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)    resulted in a decision that was based on an unreasonable determination of    the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

**III**

**A**

Gunn first asserts that the state trial court's decision to put him in shackles during his trial violated his due process rights. The Michigan Court of Appeals considered this

claim on direct review in the context of resolving a related claim for the infective

assistance of counsel and rejected it:

> Gunn first argues that he was deprived of the effective assistance of counsel because he was improperly shackled and trial counsel failed to move the trial court to remove his shackles. We disagree.
>
> We conclude that Gunn has not demonstrated that his counsel's performance prejudiced him. A shackling error does not prejudice the defendant as a matter of law if there is no indication that the jury saw the defendant's restraints. The only indication in the lower court record that Gunn was even wearing shackles is in the trial court's statement of precautions it intended to take to make certain that the jury was out of the courtroom while Gunn moved between the defense table and the witness stand. There are no indications that the jury saw Gunn in restraints. We conclude that Gunn has not shown that, but for his counsel's failure to request that the trial court remove his shackles, the results of his proceeding would have been different.

*Gunn*, 2013 WL 466289, at *4.

Gunn has not shown that the Michigan Court of Appeals' ruling was contrary to,

or an unreasonable application of, clearly established federal law. The Constitution

prohibits the use of visible shackles during the guilt or penalty phases of a trial "unless

that use is 'justified by an essential state interest'—such as the interest in courtroom

security—specific to the defendant on trial." *Deck v. Missouri*, 544 U.S. 622, 624

(2005) (quoting *Holbrook v. Flynn*, 475 U.S. 560, 568-569 (1986)). In this case, Gunn

has not presented any evidence that the jury ever saw him, or could have seen him, in

restraints or shackles.[1]  Indeed, as noted by the Court of Appeals, "[t]he only indication in the lower court record that Gunn was even wearing shackles is in the trial court's statement of precautions it intended to take to make certain that the jury was out of the courtroom while Gunn moved between the defense table and the witness stand." *Gunn*, 2013 WL 466289, at *4.  Accordingly, because Gunn has not shown that his shackles were visible, or could have been visible, to the jury, he is not entitled to federal habeas relief on this claim. *See Mendoza v. Berghuis*, 544 F.3d 650, 654 (6th Cir. 2008).

## B

Gunn next asserts that his trial counsel provided ineffective assistance.  Federal claims of ineffective assistance of counsel are subject to the deferential two-prong standard of *Strickland v. Washington*, 466 U.S. 668 (1984).  *Strickland* asks: (1) whether counsel was deficient in representing the defendant; and (2) whether counsel's alleged deficiency prejudiced the defense so as to deprive the defendant of a fair trial. *See id.* at 687.  To meet the first prong, a petitioner must establish that his attorney's representation "fell below an objective standard of reasonableness," and must overcome

---

[1] In the Michigan Court of Appeals, Gunn submitted statements from five witnesses in support of his shackling claim.  But these statements fall short of establishing that the jury ever saw, or could have seen, Gunn in shackles.  Four of the witnesses did not recall whether Gunn's shackles were visible to the jury at trial (and one did not remember Gunn at all). (*See* ECF #9-16 at Pg. ID 562, 564.)  And while the fifth witness stated that "it's always a possibility that the jury saw the shackles," the witness did not say that the jury actually saw Gunn's shackles, and the witness said that "every attempt was made so that [the jury] wouldn't see [the shackles]." (*Id.* at Pg. ID 564.)

8

the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action 'might be considered sound trial strategy.'" *Id.* at 688, 689. The "prejudice" component of a *Strickland* claim "focuses on the question of whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). Prejudice, under *Strickland*, requires showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

The Court will examine each of Gunn's claims of ineffective assistance in turn.

## 1

Gunn first argues that his trial counsel was ineffective for failing to object to Gunn's shackling at trial. As quoted in Section III(A) above, the Michigan Court of Appeals considered this claim on direct review and rejected it. *See Gunn*, 2013 WL 466289, at *4.

Gunn has not shown that that ruling was contrary to, or an unreasonable application of, clearly established federal law. Gunn has not shown that the jury ever saw, or could have seen, the shackles, and Gunn has therefore not shown that his counsel had any basis to object. Counsel is not ineffective for failing to make a futile objection. *See United States v. Sanders*, 404 F.3d 980, 986 (6th Cir. 2005); *Harris v.*

*United States*, 204 F. 3d 681, 683 (6th Cir. 2000). Gunn is therefore not entitled to federal habeas relief on this claim.

**2**

Gunn next asserts that his trial counsel was ineffective when counsel did not object to the following testimony of Gary Ginther, the state's fingerprint expert:

> Q. And what did you compare that latent print against to identify it to a James Gunn?
>
> A. My comparison occurred when I obtained a copy of a palm print that was in our system in Lansing. I had this sent to me via computer with the name up at the top of – I'm assuming that's his signature – James Gunn, and that's the piece of paper I would have used for comparison of known impressions to the latent fingerprint.

(ECF #9-8 at Pg. ID 263.) On cross-examination by Gunn's counsel about the copy of the palm print, Ginther testified that he received the copy from "the AFIS, Automated Finger Identification System, where we have access to obtaining the known impressions of an individual in the system." (*Id.* at Pg. ID 264.)

Gunn asserts that his trial counsel was ineffective for failing to object to the admission of this testimony. Gunn insists that his trial counsel should have objected because when the jury was told that Gunn's palm print was in the "system," that necessarily revealed to the jury that he had a prior criminal history. The Michigan Court of Appeals considered this claim on direct appeal and rejected it:

> The defendant must overcome the strong presumption that defense counsel's performance constituted sound trial strategy. Because defense counsel re-raised the issue in

cross-examination, it seems clear to this Court that counsel's decision not to challenge Ginther's direct examination testimony about source of the comparative fingerprint was the result of a calculated risk. We do not agree that Ginther's reference to "the known impressions of an individual in the system" implied by its very nature that Gunn had a criminal history. Fingerprints obtained in several other contexts are stored in AFIS. We conclude that Gunn has not overcome the presumption that defense counsel's decision to attack the reliability of the source of Gunn's photocopied palm print on cross-examination was sound trial strategy.

Because Gunn has not shown that defense counsel's decision not to challenge Ginther's testimony was objectively unreasonable, his ineffective assistance of counsel claim fails.

*Gunn*, 2013 WL 466289, at ** 4-5.

Gunn has not established that the Michigan Court of Appeals' ruling was contrary to, or an unreasonable application of, clearly established federal law. That court did not unreasonably conclude that the reference to Gunn's palm print being in the "system" did not materially impact Gunn's trial. As the Court of Appeals recognized, that testimony did not "imply by its very nature that Gunn had a criminal history." *Id.* Moreover, as the Court of Appeals noted, there are other reasons that a person's print could be in a state database. Accordingly, the Michigan Court of Appeals did not unreasonably reject this claim of ineffective assistance. Gunn is therefore not entitled to federal habeas relief on this claim.

Gunn further claims that his trial counsel was ineffective for failing to investigate the drug Lexapro, which Gunn alleges was taken by the complainant. Gunn did not raise this issue in the state courts. However, because the underlying merits of this claim are easily resolved, the Court will consider this claim. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"). *See also Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003).

Gunn has failed to show an entitlement to federal habeas relief on this claim. In Gunn's petition, he suggests that the complainant was suffering from certain "possible side effects" of taking the drug Lexapro while drinking alcohol, such as "memory loss." (Pet., ECF #1 at Pg. ID 16.) But Gunn has not provided any evidence that Lexapro could have impaired the complainant in the way Gunn claims or that Lexapro materially affected the complainant.[2] Gunn's speculative and conclusory allegations do not sufficiently establish that he suffered prejudice from trial counsel's alleged failure to investigate Lexapro. *See*, *e.g.*, *Cross v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir. 2007) ("Cross's ineffective assistance claim is doomed by the fact she makes nothing more than conclusory assertions about actual prejudice"); *Prince v. Straub*, 78 F. App'x 440,

---

[2] Moreover, Gunn has not provided any evidence that his trial counsel in fact failed to investigate the complainant's use of Lexapro. Gunn appears to assume that such an investigation never took place, but Gunn has not provided an affidavit or other offer of proof that could provide competent evidence to support this theory.

442 (6th Cir. 2003) ("Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief"). Gunn is therefore not entitled to federal habeas relief on this claim.

## C

Gunn next argues that the state trial court violated his due process rights when it prohibited trial counsel from asking Officer Roger Pate about a prior inconsistent statement made by the complainant related to why she went to the party store. On direct review, the Michigan Court of Appeals considered whether this limitation on cross-examination violated state evidentiary rules, and it concluded that it did not:

> The trial court ruled that Gunn could not question Officer Pate about the complainant's reasons for going to the party store because the matter was a collateral matter. A collateral matter is "[a]ny matter on which evidence could not have been introduced for a relevant purpose." Evidence that affects the credibility of the victim is relevant.

> Here, Gunn's counsel asked the complainant if she told police that she went to the party store to flirt with the clerk. The complainant testified that she did not remember. Counsel asked to recall Officer Pate, to question him about several inconsistencies between the complainant's trial testimony and her statements to him in August 2008. The prosecution argued that the reason the complainant went to the party store was a collateral matter. Counsel argued that the complainant's inability to remember the event's details affected her credibility, and thus was not a collateral matter.

> The trial court allowed counsel to recall Officer Pate and question her about the inconsistencies concerning complainant's actions at the store, but not her reasons for going there.

13

We conclude that the prior inconsistent statement evidence did not concern a collateral matter because counsel sought to introduce it for the relevant purpose of attacking the complainant's credibility with respect to the factual circumstances of this case.

However, we conclude that this error was harmless. If we conclude that a trial court erred by excluding evidence, we must consider whether the error resulted in a miscarriage of justice. When the evidentiary error is preserved, nonconstitutional error, we presume that the error is harmless unless it appears from an examination of the entire record that it is more probable than not that the error affected the outcome.

Despite the trial court's erroneous ruling on this single statement, the trial court allowed Gunn to recall Officer Pate to question him about several other inconsistencies between the complainant's statement in August 2008 and her testimony at trial. Gunn argued in closing that complainant's testimony was too inconsistent to be believed, and that she would not have confused the details if her testimony was true. The single detail, although it was part of the factual circumstances of the case, did not pertain directly to the sexual assault. Since Gunn presented other evidence that the complainant was not credible for the same reason that he sought to introduce the excluded evidence, and the single improperly excluded detail was minor, we do not think that it is likely that this error affected the outcome of Gunn's case.

*Gunn*, 2013 WL 466289, at ** 2-3.

It does not appear that the Michigan Court of Appeals adjudicated the federal constitutional aspect of this claim. Indeed, the court said that it was reviewing a "nonconstitutional error." *Id.* This Court therefore reviews Gunn's claim *de novo*. Even under this standard of review, Gunn is not entitled to federal habeas relief because to

14

the extent that the trial court erred when it limited the cross-examination of Officer Pate, that error was harmless. For purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson. See also Fry v. Pliler*, 551 U.S. 112, 117-18 (confirming that the *Brecht* standard applies in "virtually all" habeas cases); *Ruelas v. Wolfenbarger*, 580 F.3d 403, 412 (6th Cir. 2009) ("The answer in this Circuit is that *Brecht* is always the test, and there is no reason to ask both whether the state court "unreasonably" applied [clearly-established federal law] under the AEDPA and, further, whether the constitutional error had a 'substantial and injurious' effect on the jury's verdict"). Here, as the Michigan Court of Appeals aptly noted when it resolved the state claim, Gunn's counsel questioned Officer Pate about a number of other inconsistent statements that the complainant made, and Gunn's counsel highlighted those inconsistencies during closing arguments. Gunn has not demonstrated that the exclusion of this one additional inconsistent statement had a "substantial and injurious effect … [on] the jury's verdict." *Brecht*, 507 U.S. at 622. Gunn is therefore not entitled to federal habeas relief on this claim.

## D

Gunn next argues that the state trial court erred when it sentenced him because the trial court improperly assessed 50 points for offense variable 7 ("OV 7"), aggravated physical abuse. He also contends that his trial counsel was ineffective for failing to

object to the allegedly-wrongful scoring.  The Michigan Court of Appeals reviewed

these claims on direct review and rejected them:

> We do not think that trial court clearly erred when it scored 50 points for OV 7 under the facts in this case, because they are not substantially similar. In *Glenn,* there was no evidence that the robbery took place over a prolonged period. Here, there was evidence that Gunn placed his hand on the complainant's neck and kept it there for a prolonged period, while instructing her to drive. In *Glenn,* the defendant struck each victim once and they did not suffer any injuries. Here, Gunn jerked the complainant's head around and battered the complainant repeatedly, including with her cell phone. The complainant's injuries included extensive bruising, tenderness, and a laceration on her face that required stitches. The complainant testified that when she recognized Gunn's photograph nearly two years after the incident, she began to cry. From the facts in this case, we conclude that it was not clear error for the trial court to find that (1) Gunn subjected the complainant to prolonged pain or humiliation for his gratification, or (2) Gunn intended his conduct to substantially increase the complainant's fear and anxiety. Under either of these circumstances, the trial court properly scored 50 points for OV 7.
>
> Gunn also argues that counsel was ineffective for failing to challenge the trial court's score for OV 7. Counsel is not ineffective for making futile challenges.  We have concluded that the trial court did not err when it scored 50 points for OV 7. Thus, Gunn's ineffective assistance claim based on OV 7 must fail.

*Gunn*, 2013 WL 466289, at ** 5-6.

To the extent that Gunn challenges the guidelines calculation on the merits, that

claim is not cognizable on federal habeas review because it is based solely on state law,

and "a federal court may not issue the writ on the basis of a perceived error of state

law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Therefore, Gunn's claim that the state trial court mis-scored OV7 when it determined the state sentencing guidelines is non-cognizable on federal habeas review. *See Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 20103).

Gunn's ineffective assistance claim related to the alleged mis-scoring of OV7 also does not entitle him to federal habeas relief. Gunn has not shown that the state court's guidelines calculation was incorrect, and thus he has not and cannot show that he suffered any prejudice from his counsel's failure to object to that calculation. As noted above, counsel does not render ineffective assistance when counsel fails to lodge a futile objection. *See Sanders*, 404 F.at 986. Accordingly, Gunn is not entitled to federal habeas relief on these claims.

### E

Gunn next contends that the state trial court violated the *ex post facto* clauses of the Michigan and United States constitutions when it imposed a $130 assessment versus a $60 assessment.[3] This claim fails because the imposition of a monetary fine is not cognizable on federal habeas review. *See Michaels v. Hackel*, 491 F. App'x 670, 671 (6th Cir. 2012) ("reject[ing]" argument that petitioners could challenge fines imposed by the state courts under Section 2254); *Washington v. McQuiggin*, 529 F. App'x 766,

---

[3] Respondent argues that this claim is procedurally defaulted. However, because the underlying merits of this claim are easily resolved, the Court will consider this claim. *See* 28 U.S.C. § 2254(b)(2); *Hudson*, 351 F.3d at 216.

(6th Cir. 2013) (citing cases and noting that "[i]n general, fines or restitution orders fall outside the scope of the federal habeas statute because they do not satisfy the 'in custody' requirement of a cognizable habeas claim"). Gunn therefore is not entitled to federal habeas relief on this claim.

**F**

Finally, Gunn contends that the state trial court mis-scored a second offense variable, OV 8, related to victim asportation or captivity. The Michigan Court of Appeals considered this claim on direct review and rejected it:

> The jury acquitted Gunn of kidnapping, but this does not mean that Gunn did not asport the victim for the purposes of his sentencing guidelines score. A jury must find the elements of a crime beyond a reasonable doubt, but the sentencing court must find only that a preponderance of the evidence supports a sentencing guideline score. The trial court is not bound by the jury's determination, as long as the record evidence adequately supports its score.
>
> We conclude that the record adequately supported the court's determination that Gunn asported the victim. Asportation only requires that the defendant move the victim, with or without force. A victim is asported to a situation of greater danger if the victim is asported to a place that a person is less likely to see the defendant commit the crime. The complainant testified that Gunn forced her to drive from the party store to a location near a school where busses would pick up or drop off students. Donald also testified that Gunn drove the complainant to the same location. It is much more likely that a witness will observe a crime occurring in a liquor store parking lot at midnight than in a school bus lane at midnight. Thus, the record supported the trial court's determination that Gunn moved the complainant to a location of greater danger, since there was

> evidence that Gunn either moved the victim or forced the
> victim to move to a location that was more secluded.

*Gunn*, 2013 WL 466289, at *6.

As addressed above, this state sentencing claim is not cognizable on federal habeas review because it is based solely on state law. *See Pulley*, 465 U.S. 37. Gunn is therefore not entitled to federal habeas relief on this claim.

As Gunn has failed to demonstrate entitlement to federal habeas relief with respect to any of his claims, the Court will **DENY** his habeas petition (ECF #1).

## IV

In order to appeal the Court's decision, Gunn must obtain a certificate of appealability. To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *See Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *See Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002).

Here, jurists of reason would not debate the Court's conclusion that Gunn has failed to demonstrate entitlement to habeas relief with respect to any of his claims

because they are all devoid of merit. Therefore, the Court will **DENY** Gunn a certificate of appealability.

Finally, although this Court declines to issue Gunn a certificate of appealability, the standard for granting an application for leave to proceed *in forma pauperis* on appeal is not as strict as the standard for certificates of appealability. *See Foster v. Ludwick*, 208 F.Supp.2d 750, 764 (E.D. Mich. 2002). While a certificate of appealability may only be granted if a petitioner makes a substantial showing of the denial of a constitutional right, a court may grant *in forma pauperis* status if it finds that an appeal is being taken in good faith. *See id.* at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a). Although jurists of reason would not debate this Court's resolution of Gunn's claims, an appeal could be taken in good faith. Accordingly, the Court **GRANTS** Gunn permission to proceed *in forma pauperis* on appeal.

## V

Accordingly, for the reasons stated above, the Court 1) **DENIES WITH PREJUDICE** Gunn's petition for a writ of habeas corpus (ECF #1), 2) **DENIES** Gunn a certificate of appealability, and (3) **GRANTS** Gunn permission to proceed *in forma pauperis* on appeal.

**IT IS SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: October 18, 2018

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on October 18, 2018, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764